IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REENGINEERING CONSULTANTS, LTD., d/b/a RESULTS ENGINEERING, | : | |
| | : | Case No. 2:08-cv-47 |
| Plaintiff, | : | Judge Holschuh |
| v. | : | Magistrate Judge Abel |
| EMC CORP. f/k/a CAPTIVA SOFTWARE CORP., | : | |
| | : | |
| Defendant. | | |

## MEMORANDUM OPINION & ORDER

Plaintiff Results Engineering, an Ohio corporation, sues Defendant EMC Corp. ("EMC") alleging claims for breach of contract and tortious interference with business relations. The claims arise from a contract that Plaintiff entered into with Captiva Software Corporation ("Captiva"), a California corporation, which has since been acquired by EMC. Plaintiff alleges that Captiva, by soliciting business from Plaintiff's prospective customers, not only breached the contract, but also tortiously interfered with Plaintiff's business opportunities. The matter is before the Court on EMC's motion for partial judgment on the pleadings under Rule 12(c) or, alternatively, for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. # 15). According to EMC, Plaintiff's tortious interference with business relations claim is barred by statute of limitations, or, alternatively, by the existence of a contract between the parties. For the following reasons, the Court **GRANTS** EMC's motion to dismiss Plaintiff's tortious interference with business relations claim.

**I.     Background**[1]

On October 1, 2004, Plaintiff entered into a contract with Captiva. (Am. Compl. ¶ 3.) The contract, a Reseller Agreement, authorized Plaintiff to market software solutions it created with Captiva to Plaintiff's end users or prospects. (Am. Compl. Ex. A.) Section 8(d) of that contract prohibits Captiva from knowingly soliciting business from Plaintiff's end users or prospects. The provision requires Captiva to make reasonable efforts to refer inquiries it knowingly receives from Plaintiff's current or prospective customers to Plaintiff. Finally, the provision contains notification requirements to be met by Captiva in the event one of Plaintiff's end users or prospects insists on doing business directly with Captiva.

Plaintiff claims that Captiva breached § 8(d) of the contract. (Am. Compl. ¶¶ 30-40.) According to Plaintiff, Captiva knowingly solicited orders for its software from four of Plaintiff's prospective customers—three Ohio corporations and one Ohio state agency. With respect to one of these prospective customers, Plaintiff alleges, if Captiva did not directly solicit the business, then Captiva failed to notify Plaintiff that it had been approached by one of Plaintiff's prospects as required under the contract. Plaintiff also alleges that Captiva, by knowingly soliciting the business of these four prospective customers, and through its contacts with another of Plaintiff's prospects, tortiously interfered with Plaintiff's business relations. (Am. Compl. ¶ 41-48.) Plaintiff asserts that Captiva's breach of contract and tortious interference with its business relations caused Plaintiff to lose at least $1.5 million in profits, future license sales, professional services, and maintenance revenue.

---

[1] The following factual information is taken from Plaintiff's complaint and is assumed to be true for the purposes of this motion. See Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974).

EMC responds that Plaintiff's tortious interference with business relations claim is barred by statute of limitations, or, alternatively, by the existence of a contract between the parties. (Def.'s Mot. for Partial J. on Pleadings 1-2.) According to EMC, California law applies in this diversity action, subjecting Plaintiff's tort claim to California's two year statute of limitations. EMC asserts that Plaintiff brought this suit more than two years after learning of Captiva's alleged wrongdoing. (Def.'s Mot. for Partial J. on Pleadings 5-8.)

EMC argues alternatively that if Ohio law governs, making California's statute of limitations inapplicable, Plaintiff's tort claim is still precluded, under Ohio's economic loss doctrine, by the existence of a valid contract between the parties. (Def.'s Mot. for Partial J. on Pleadings 8-11.) EMC's motion to dismiss this claim under Rule 12(c) or, alternatively, for summary judgment on the claim under Rule 56, is now before the Court.

## II.  Choice of Law

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Therefore, Ohio's choice of law rules govern this case.

In tort actions, to determine which state's law governs, Ohio courts apply the balancing test set forth in the Restatement (Second) of Conflicts of Laws ("Restatement"). Muncie Power Prod., Inc. v. United Techs. Auto., Inc., 328 F.3d 870, 873-74 (6th Cir. 2003); Morgan v. Biro Mfg. Co., Inc., 15 Ohio St.3d 339, 342, 474 N.E.2d 286, 289 (Ohio 1984). According to § 145 of the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." RESTATEMENT (SECOND) OF CONFLICT OF

3

LAWS § 145 (1971). To determine which state has the most significant relationship to the occurrence and the parties, § 145 provides four factors to be considered by courts:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Id. The factors above "are to be evaluated according to their relative importance with respect to the particular issue." Id.

Plaintiff argues that, applying the four factors above, Ohio has the most significant relationship to the alleged tortious conduct and the parties in this case. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial J. on Pleadings 5-7.) The Court agrees. First, and most important, Plaintiff's alleged injury occurred in Ohio. See RESTATEMENT § 145. Plaintiff alleges that Captiva's intentional disruption of Plaintiff's prospective business opportunities caused Plaintiff to lose profits it would have earned in Ohio. Second, Plaintiff alleges that Captiva's tortious interference occurred in Ohio. See id. The customers Captiva allegedly lured away from Plaintiff were all Ohio corporations or state agencies. Third, Plaintiff is an Ohio corporation. See id. Finally, Plaintiff's allegation that it "and EMC worked together to develop business solutions in Ohio for end users in Ohio" suggests that the relationship between Plaintiff and Captiva was centered in Ohio. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial J. on Pleadings 6.)

These factors, taken together, show that Ohio has the most significant relationship with the alleged tortious conduct and the parties in this case. The fact that Captiva was a California corporation before it merged with EMC does not sufficiently outweigh Ohio's interest in

Plaintiff's tort claim. Moreover, the existence of a choice of law provision in the contract between Plaintiff and Captiva electing California law to govern the contract does not mean, as EMC seems to suggest, that the parties' relationship was centered in California.[2] (Def.'s Mot. for Partial J. on Pleadings 7.) EMC's failure to dispute Plaintiff's contention that both its injuries and the tortious conduct that allegedly caused those injuries occurred in Ohio lends further support to the conclusion that the § 145 factors weigh in favor of applying Ohio law. Therefore, the Court finds that Ohio law governs Plaintiff's tortious interference with business relations claim.

## III.    Rule 12(c) Standard

Motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. See Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999). The purpose of a motion under either rule is to test the sufficiency of the complaint. A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." But the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

---

[2] While the choice of law provision in the contract may require the Court to apply California law to Plaintiff's breach of contract claim, the provision is irrelevant to the question of which state's law governs Plaintiff's tort claim.

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Grindstaff, 133 F.3d at 421. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972). It will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Grindstaff, 133 F.3d at 421.

The Court will grant a motion for dismissal under Rule 12(b)(6) in the absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint, an insurmountable bar to relief indicates that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

**IV.    Discussion**

EMC asserts two alternative grounds for dismissing Plaintiff's tortious interference with business relations claim. EMC first argues that Plaintiff's tort claim is barred by California's two year statute of limitations. (Def.'s Mot. for Partial J. on Pleadings 5-8.) EMC argues alternatively that, under Ohio's economic loss doctrine, the existence of an undisputedly valid contract between Plaintiff and Captiva precludes Plaintiff's tortious interference with business relations claim. (Def.'s Mot. for Partial J. on Pleadings 8-11.) The Court will take each argument in turn.

   **A.    Statute of Limitations**

EMC argues that Plaintiff failed to file this suit within California's two year statute of limitations period for tortious interference with business relations. As explained above,

6

however, Ohio law, not California law, governs this diversity action. Therefore, California's statute of limitations is inapplicable to Plaintiff's tort claim.

EMC recognizes that this Court must apply the factors from § 145 of the Restatement to determine the substantive law governing Plaintiff's tort claim. (Def.'s Mot. for Partial J. on Pleadings 6-7.) But EMC makes little effort to dispute Plaintiff's arguments and persuade this Court that a balancing of the factors in § 145 militates in favor of applying California law. Instead, EMC asserts two reasons why, regardless of the outcome of the § 145 balancing test, this Court should apply California's statute of limitations to Plaintiff's tort claim. Both arguments are meritless.

EMC first argues that Plaintiff should be estopped from reversing its position on which state's law governs its tort claim. (Def.'s Mot. for Partial J. on Pleadings 7.) EMC asserts, and Plaintiff does not dispute, that until Plaintiff amended its complaint, Plaintiff argued its tortious interference with business relations claim under California law. According to EMC, Plaintiff only reversed its position, and amended its complaint to allege its tort claim under Ohio law, after learning from EMC at a status conference that the tort claim may be barred by California's statute of limitations. (Def.'s Mot. for Partial J. on Pleadings 4, 7.) EMC argues, therefore, that Plaintiff should be prevented from changing its choice of law position.

Any allegations Plaintiff previously made regarding the law governing its tort claim were superseded when Plaintiff amended its complaint. EMC does not allege any procedural or substantive defects with the amended complaint that would require the Court to exclude the pleading. Moreover, EMC cites no authority to support the application of the estoppel doctrine to this situation. The Court is unpersuaded by EMC's estoppel argument.

7

EMC next argues that the Court should treat Plaintiff's previous choice of law position as a judicial admission. (Def.'s Mot. for Partial J. on Pleadings 7.) Judicial admissions "'go to questions of fact,' thereby 'dispensing with proof of formal matters and of facts about which there is no real dispute.'" Passa v. City of Columbus, 2007 WL 3125130, *4 (S.D. Ohio Oct. 24, 2007) (quoting New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963)). The Sixth Circuit is reluctant to treat legal conclusions reached by counsel as judicial admissions. MacDonald v. General Motors Corp., 110 F.3d 337, 341 (6th Cir. 1997).

In this case, the question of which state's law governs Plaintiff's tort claim is not a question of fact; it is a question of law, governed in Ohio by the balancing test in § 145 of the Restatement. See Passa, 2007 WL 3125130 at *4; New Amsterdam, 323 F.2d at 24. Furthermore, Plaintiff's original choice of law position—that California law governs Plaintiff's tort claim—was an incorrect legal conclusion that should not be treated as a judicial admission. See MacDonald, 110 F.3d at 341. To treat Plaintiff's original choice of law position as a judicial admission, and deprive Plaintiff of the opportunity to correct an erroneous legal conclusion made by counsel through an amended complaint, would turn "a valuable time-saving device, the voluntary use of which should be encouraged, into a trap for the unwary." Id. Therefore, the Court will not treat Plaintiff's previous choice of law position as a judicial admission. Ohio law governs Plaintiff's tortious interference with business relations claim, and California's statute of limitations is inapplicable.[3]

---

[3] EMC cites Wilton Corp. v. Ashland Castings Corp. for the proposition that when parties agree on the applicable substantive law, courts need not inquire into choice of law issues. 188 F.3d 670, 673 n.2 (6th Cir. 1999). While that is true, the parties in this case obviously disagree on which state's law governs Plaintiff's tort claim. The parties may have agreed at one point. But as explained above, Plaintiff was free to change its position, and bring the choice of law

### B.     The Existence of the Contract

EMC next argues that under Ohio law, the existence of an undisputedly valid contract between Plaintiff and Captiva precludes Plaintiff's tortious interference with business relations claim. EMC frames this argument under Ohio's economic loss doctrine. (Def.'s Mot. for Partial J. on Pleadings 8.) According to EMC, under the economic loss doctrine, when a plaintiff has a claim governed by a contract, tort liability cannot be imposed for purely economic damages. Therefore, EMC argues, "where a plaintiff bases its claim on breach of contract, the economic loss rule bars the plaintiff from using the same set of facts as the basis for a tort claim." (Def.'s Mot. for Partial J. on Pleadings 8.) In response, Plaintiff does not dispute EMC's contention that its tort claim is barred by the existence of the contract. Plaintiff instead argues that it should be permitted to plead its tortious interference claim as an alternative theory of recovery to its breach of contract claim. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial J. on Pleadings 8-9.) While EMC is misguided when it relies on the economic loss rule, the Court agrees with EMC's underlying argument that Plaintiff's tort claim is barred by the existence of a valid contract between the parties.

The economic loss rule prevents the recovery in negligence of purely economic loss. Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 42 Ohio St.3d 40, 44-46, 537 N.E.2d 624, 630-31 (Ohio 1989); Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc., 106 Ohio St.3d 412, 414-16, 835 N.E.2d 701, 704-05 (Ohio 2005); Cincinnati Gas & Elec. Co. v. General Electric Co., 656 F. Supp. 49, 60-61 (S.D. Ohio 1986). The prohibition on the recovery in

---

question into dispute through an amended complaint. Because the parties disagree on whether California or Ohio law governs Plaintiff's tort claim, a choice of law analysis is necessary.

negligence of purely economic loss arises from the inevitable absence of a duty on the defendant to protect purely economic loss suffered by the plaintiff. Chemtrol, 42 Ohio St.3d at 45, 537 N.E.2d at 630-31. According to the Ohio Supreme Court:

> the law of negligence does not extend . . . [a] duty so far as to protect . . . economic expectations, for such protection would arise not under the law but rather solely by agreement between the parties. "[W]hen the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract."

Id. (quoting Battista v. Lebanon Trotting Ass'n, 538 F.2d 111, 117 (6th Cir. 1976)). Negligence law "is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n, 54 Ohio St.3d 1, 6-7, 560 N.E.2d 206, 211 (Ohio 1990).

Relying on the economic loss rule, EMC points to the undisputed fact that Plaintiff, through its tortious interference claim, seeks to recover only economic losses—lost profits, future license sales, professional services, and maintenance revenue. (Def.'s Mot. for Partial J. on Pleadings 8.) EMC further argues that Plaintiff has alleged no breach of duty distinct from the alleged breach of contract. (Def.'s Reply Mem. in Support of Mot. for Partial J. on Pleadings 5.) But EMC fails to recognize that Plaintiff's tort claim does not sound in negligence; it is an intentional tort claim for interference with business relations. The economic loss rule prevents recovery in negligence of purely economic loss, not recovery under an intentional tort theory for economic loss. See Chemtrol, 42 Ohio St.3d at 45, 537 N.E.2d at 630-31.

It makes sense that the economic loss rule would be limited to negligence actions. In a tortious interference with business relations action, for example, any recovery will always be for purely economic loss. The tort is designed to redress economic losses when a defendant has

10

unfairly and intentionally disrupted a plaintiff's business. A negligence cause of action, on the other hand, is designed to redress personal injury or injury to property. See Floor Craft, 54 Ohio St.3d at 7, 560 N.E.2d at 211. Moreover, the fundamental policy consideration underlying the economic loss rule—the inevitable absence of a duty independent of that created by a contract in a negligence action for purely economic loss—is missing in the intentional tort context, where duty is not an element of the claim.[4] Therefore, because Plaintiff's claim is for tortious interference with business relations, and does not sound in negligence, the economic loss rule is inapplicable in this case.

While EMC is misguided in its application of the economic loss rule to this case, EMC's underlying proposition that the existence of the contract between Plaintiff and Captiva precludes Plaintiff's tortious interference with business relations claim (even if mislabeled the economic loss doctrine) has merit. According to the Ohio Supreme Court:

> it is well established that "though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference." An exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with business resulting as a mere consequence of such breach.

Digital & Analog Design Corp. v. North Supply Co., 44 Ohio St.3d 36, 46-47, 540 N.E.2d 1358,

---

[4] In Ohio, the elements of a tortious interference with business relations claim are:

    (1) a business relationship;
    (2) the wrongdoer's knowledge thereof;
    (3) an intentional interference causing a breach or termination of the relationship; and;
    (4) damages resulting therefrom.

Harris v. Bornhorst, 513 F.3d 503, 523 (6th Cir. 2008).

1368 (Ohio 1989) (quoting Cherberg v. Peoples Natl. Bank of Washington, 564 P.2d 1137, 1143 (Wash. 1977)).

In this case, Plaintiff does not allege that Captiva's alleged solicitation of Plaintiff's customers was the result of some ulterior motive of Captiva to interfere with Plaintiff's business. See Digital & Analog, 44 Ohio St.3d at 46-47, 540 N.E.2d at 1368. Furthermore, construing the complaint in Plaintiff's favor, the Court finds no evidence of such a motive that would give rise to a tortious interference claim. See id. Allowing Plaintiff's tortious interference claim to proceed, without any allegation by Plaintiff of any illegal motive on Captiva's part, would allow Plaintiff to present his breach of contract claim again as a tort claim. See Cincinnati Gas, 656 F. Supp. 49 at 61 ("Under Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim."). And as EMC points out, Plaintiff cannot circumvent the terms of its contract with Captiva simply by alleging its breach of contract claim as a tortious interference claim. See Floor Craft, 54 Ohio St.3d at 7, 560 N.E.2d at 211-12. Therefore, the existence of the contract between Plaintiff and Captiva, and the absence of any allegation that Captiva's alleged breach was motivated by a wrongful desire to interfere with Plaintiff's business, precludes Plaintiff's tortious interference with business relations claim.

Plaintiff does not dispute that its tort claim is barred by the existence of the contract. Plaintiff instead argues that it should be permitted to assert its tortious interference claim in the alternative to its breach of contract claim. As explained above, however, because of the contract between Plaintiff and Captiva, and the absence of any evidence of an illegal motive behind Captiva's alleged solicitation of Plaintiff's customers and prospects, Ohio law does not recognize Plaintiff's tortious interference with business relations claim. See Digital & Analog,

44 Ohio St.3d at 46-47, 540 N.E.2d at 1368.  Moreover, EMC admits that the Reseller Agreement between Plaintiff and Captiva is a valid contract.  (Def.'s Reply Mem. in Support of Mot. for Partial J. on Pleadings 3.)  Therefore, under Ohio law, Plaintiff cannot state, in the alternative or otherwise, a tortious interference with business relations claim.  Because Plaintiff faces an insurmountable bar to relief on its tortious interference with business relations claim, the Court **GRANTS** EMC's motion to dismiss.  <u>Little</u>, 196 F. Supp.2d at 662.

V.      **Conclusion**

For the reasons above, the Court **GRANTS** EMC's motion to dismiss Plaintiff's tortious interference with business relations claim.  (Doc. # 15).  That claim is **DISMISSED WITH PREJUDICE**.  Plaintiff's breach of contract claim remains.

**IT IS SO ORDERED**.


Date: January 14, 2009                          **/s/ John D. Holschuh**
                                                John D. Holschuh, Judge
                                                United States District Court