IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REENGINEERING CONSULTANTS, LTD., d/b/a RESULTS ENGINEERING, | : | |
| | : | Case No. 2:08-cv-47 |
| Plaintiff, | : | Judge Holschuh |
| v. | : | Magistrate Judge Abel |
| EMC CORP., f/k/a CAPTIVA SOFTWARE CORP., | : | |
| | : | |
| Defendant. | | |

## MEMORANDUM OPINION & ORDER

Plaintiff, Results Engineering ("Results"), an Ohio corporation, is a systems integrator and reseller of software products in the field of advanced capture technology. Defendant, EMC Corp. ("EMC"), is a developer and provider of software products and system solutions for which Plaintiff was an authorized reseller for various products over the course of the parties' business relationship. Plaintiff brings this suit against Defendant for breach of contract and tortious interference with business relations. Plaintiff's claims arise from a contract (the "Captiva Agreement") that Plaintiff entered into with Captiva Software Corporation ("Captiva"), a California corporation, which has since been acquired by EMC. Plaintiff claims that Captiva breached the Captiva Agreement, and also tortiously interfered with its business relations, by soliciting business from Plaintiff's prospective customers. This matter is currently before the Court on Plaintiff's Motion for Leave to File a Second Amended Complaint (doc. # 34) and Defendant's Motion for Summary Judgment (doc. # 29). For the reasons below, the Court **GRANTS** Plaintiff's Motion for Leave to File a Second Amended Complaint (doc. # 34) and **DENIES** as moot Defendant's Motion for Summary Judgment directed to Plaintiff's Amended

Complaint (doc. # 29).

## I. Background and Procedural History

On October 1, 2004, Plaintiff entered into a contract with Captiva. (Am. Compl., Ex. A, doc. # 12.) On approximately December 31, 2005, EMC acquired Captiva. (Am. Compl. ¶ 2.) The Captiva Agreement authorized Plaintiff to market and sell FormWare, InvoicePack, ClaimPack, and Input*Accel* to Plaintiff's end-users or prospects as a non-exclusive reseller. (Am. Compl. Ex. A.) The Captiva Agreement also provides for certain "rules of engagement" regarding Captiva's conduct with respect to Plaintiff's cutomers. Specifically, ¶ 8(d) of the Captiva Agreement prohibits Captiva from knowingly soliciting business from Plaintiff's end-users or prospects. (Id.) The provision also requires Captiva to make reasonable efforts to refer inquiries it knowingly receives from Plaintiff's current or prospective customers to Plaintiff. Finally, the provision requires that Captiva notify Plaintiff in the event that one of Plaintiff's end-users or prospects insists on doing business directly with Captiva, and thereafter wait 72 hours before accepting or shipping such an order. (Id.) Plaintiff claims that Defendant breached ¶ 8(d) of the Captiva Agreement by knowingly soliciting orders from Plainitff's prospective customers.

On January 15, 2008, Plaintiff filed suit against EMC for breach of contract and tortious business interference. (Doc. # 2.) On August 20, 2008, Plaintiff filed an Amended Complaint adding two additional disputes. ( See Am. Compl., doc. # 12.) Plaintiff's Amended Complaint identifies five end-users with whom Plaintiff alleges Defendant made direct sales in contravention of ¶ 8(d) of the Captiva Agreement or otherwise tortiously interfered with Plaintiff's business prospects. (Am. Compl., doc. # 12.) Plaintiff specifically alleges that

Defendant's conduct breached ¶ 8(d) with respect to end-users FirstMerit Bank, Lithia Motors, ACS, and the Ohio Department of Public Safety ("ODPS"). (Id. ¶¶ 30-40.) With respect to these four end-users plus a potential fifth, the Lucas County Criminal Justice Coordinating Council ("CJCC"), Plaintiff alleged that Defendant tortiously interfered with its prospective economic advantage. (Id. ¶¶ 41-48.) Additionally, Plaintiff alleged that Defendant's conduct with respect to CJCC ultimately resulted in Plaintiff losing its listing on Ohio's State Term Schedule, a schedule which permits Ohio agencies to license software from companies on the list without going through the competitive bid process. (Id. ¶¶ 11-12.) As a result of losing the listing on the State Term Schedule, Plaintiff claims that it lost potential contracts with other state agencies. (Id. ¶¶ 12, 44.) Plaintiff asserts that Captiva's breach of contract and tortious interference with its business relations caused Plaintiff to lose at least $1.5 million in profits, future license sales, professional services, and maintenance revenue.

On August 29, 2008, Defendant moved to dismiss Plaintiff's tortious interference with business relations claim under Federal Rule of Civil Procedure 12(c). (Doc. # 15). The Court granted that motion on January 14, 2009, finding that the existence of a valid contract between the parties and lack of any allegation of illegal motive on Defendant's part, precluded a tortious interference with business relations claim under Ohio law. Thus, Plaintiff's tortious interference claim was dismissed with prejudice. (Doc. # 20.)

After a sufficient period of discovery, which was extended to June 1, 2009, Defendant filed a Motion for Summary Judgment on June 22, 2009. (Doc. # 29.) Plaintiff responded on August 7, 2009 (doc. # 36) and Defendant replied on September 4, 2009 (doc. # 40). On the same date that Plaintiff responded to the motion for summary judgment, August 7, 2009,

Plaintiff also filed a Motion for Leave to File Second Amended Complaint. (Doc. # 34.) Defendant responded in opposition on August 31, 2009 (doc. # 39) and Plaintiff replied on September 14, 2009 (doc. # 41).

## II.     Motion for Leave to File Second Amended Complaint

Rule 15 governs the amendment of pleadings and provides that once a party can no longer amend as a matter of right, ". . . a party may amend its pleading only with the opposing party's written consent or the court's leave," and leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." Moore v. City of Paducah, 790 F.2d 557, 561 (6th Cir. 1986) (citing Conley v. Gibson, 355 U.S. 41, 48 (1957)). A court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" in deciding whether to grant leave. Foman v. Davis, 371 U.S. 178, 182 (1962); accord Robinson v. Mich. Consol. Gas Co., 918 F.2d 579, 591 (6th Cir. 1990). Although "[t]he decision as to whether justice requires the amendment is committed to the district court's sound discretion," Moore, 790 F.2d at 559 (citations omitted), "[t]o deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" Duggins v. Steak 'N Shake, 195 F.3d 828, 834 (6th Cir. 1999) (quoting Moore, 790 F.2d at 562).

Here, Results moves to amend its complaint for a second time to add two new claims for breach of contract involving two new end-users, Westfield Insurance and Family Heritage Life. (Pl.'s Mot. for Leave to File Second Am. Compl. 2, Ex. 1, doc. # 34.) Results argues that both

4

the initial and amended complaint involve disputes regarding EMC's interactions with Results' end-users and that these additional claims similarly involve EMC's contacts with its end-users. (Id. 3.) Furthermore, even though these claims were not in its Amended Complaint, Plaintiff asserts that EMC was aware of them before discovery and in fact conducted discovery related to these two claims, including document requests and questioning Plaintiff's President, Mr. Boyd, during his deposition. (Id. 3-4.) Thus, Plaintiff argues that EMC will not be prejudiced by this amendment and will not incur additional expenses because it has already conducted discovery on these disputes. (Id.)

EMC responds that Plaintiff has only sought leave to amend its complaint for the second time in order to oppose certain portions of EMC's motion for summary judgment. (Def.'s Mem. in Opp'n 1, doc. # 39.) EMC argues that Plaintiff has unduly delayed in seeking amendment without providing any justification to meet the heightened burden at this late stage in the litigation. (Id. 2, doc. # 39 (citing Wade v. Knoxville Utilities Bd., 259 F.3d 452, 459 (6th Cir. 2001).) Defendant notes that the Sixth Circuit has held that allowing amendment after the dicovery deadline has passed 'creates significant prejudice.' (Id. 3 (quoting Duggins, 195 F.3d at 834).) Defendant also asserts that Plaintiff is 'not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed . . . before introducing entirely different legal theories in an amended complaint.' (Id. (quoting Priddy v. Edelman, 883 F.2d 438, 446 (6th Cir. 1989)).) Furthermore, EMC argues that it will be prejudiced by the addition of these claims as it only became aware of them in late February and March 2009, near the end of the initial discovery cut-off and months after interrogatories and document requests had already been served on Plaintiff in November 2008. (Id. 3-4.) The late disclosure of these claims

5

made it impracticable to conduct vigorous further discovery and in any event, EMC argues, it is Plaintiff's obligation to identify and state its claims in its original and amended complaint. (Id. 4.)

Plaintiff replies that delay alone does not constitute sufficient grounds to deny its motion. Instead, Plaintiff argues, the determining factor is the prejudice EMC might suffer. (Pl.'s Reply 2, doc. # 41.) Plaintiff contends that EMC already conducted discovery on these disputes over the course of three days of questioning Mr. Boyd throughout March and April 2009 and failed to conduct additional discovery even though EMC could have, given that the discovery cut-off was extended to June 1, 2009. (Id. 3-4.) Additionally, Plaintiff claims, EMC cannot suffer prejudice where it already included these disputes in its motion for summary judgment and cited Mr. Boyd's deposition testimony. (Id. 4.)

The Court finds that despite Plaintiff's delay in seeking amendment, Defendant will only suffer slight prejudice, if at all, by the addition of these two disputes. Allowing amendment after the close of discovery can create significant prejudice, as Defendant argues the Sixth Circuit held in Duggins v. Steak 'N Shake, 195 F.3d 828 (6th Cir. 1999). However, in that case, the plaintiff sought to amend her original complaint, which alleged Title VII claims for sexual harassment and gender discrimination, to include a claim under the Fair Labor Standards Act, Duggins, 195 F.3d at 830. In upholding the district court's decision to deny leave to amend, the Sixth Circuit first explained that "[t]o deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" Id. at 834 (citation omitted). The court then held that allowing amendment after the passage of discovery and the filing of summary judgment would create significant prejudice to the defendants because they would have to reopen discovery and

6

prepare a new defense for a "claim quite different" from that originally asserted. Id. at 834. Because the basis of the claim was known to the plaintiff for several months and she did not offer any justification for her delay, nor could the court find any, the Sixth Circuit held that the district court did not abuse its discretion in denying leave to amend. Id.

In this case, while the basis of these claims may have been known to Plaintiff for some time and Plaintiff has not offered justification for the delay, the new claims are very similar to the existing claims and in fact, rely upon the same contract and same type of conduct by Defendant. And even though Defendant may need to reopen discovery, it does not need to prepare a new defense for a "claim quite different" from those originally asserted, as evidenced by the contract defenses already included in Defendant's motion for summary judgment. (See Def.'s Mot. Summ. J. 11, 15, 20 26, 35-38, doc. # 29; Def.'s Reply 17, doc. # 40.) Furthermore, the Duggins court held that there must be a finding of signifcant prejudice to deny leave to amend; and in this case, the Court is unable to find any showing of signifcant prejudice. 195 F.3d at 834.

Furthermore, although Defendant is correct that Plaintiff is not entitled to wait until all deadlines have passed to introduce completely different legal theories in an amended complaint, that also is not the situation currently before the Court. (See Def.'s Mem. in Opp'n 3, quoting Priddy v. Edelman, 883 F.2d 438 (6th Cir. 1989)). In Priddy, the court observed that the plaintiff waited fifteen months before he sought leave to file an amended complaint that was based on the same exact facts as the original complaint, but asserted new theories of recovery. 883 F.2d at 446. The court found that the plaintiff did not offer an explanation for the delay and that in complex cases like Priddy, a class and individual shareholder action, it was important for the

court to enforce deadlines. Id. at 447.  Furthermore, drastic amendments asserting new legal theories on the eve of trial would be very likely to create prejudice to the defendants as well as waste additional time and expense on discovery and summary judgment motions. Id.

In this case, although Plaintiff does not offer an explanation for its delay, the two claims it seeks to add are not "entirely different legal theories," but rather, additional disputes which Plaintiff alleges involve the same contract provision and same conduct that has always been at issue in this lawsuit: ¶ 8(d) of the Captiva Agreement and EMC/Captiva's direct sales to Plaintiff's end-users.  Furthermore, this is not a complex class and individual shareholder suit where the delay and expense caused by the amendment of one individual's complaint at a late stage in the litigation creates signficant prejudice to the defendant.  Instead, and as Plaintiff points out, Defendant has already conducted discovery on these two claims and even briefed these two additional disputes in its motion for summary judgment. (See Def.'s Mot. Summ. J. 11, 15, 20 26, 35-38, doc. # 29.)  Although it appears that Defendant may have raised these two claims in its motion for summary judgment primarily to argue that neither claim should be considered by the Court because they were not properly pled in the initial or amended complaint, Defendant also made alternative arguments for those claims' dismissal which revealed that Defendant understood the basis of Plaintiff's claims, including the product involved, the contract, and most of the relevant dates. (See id.)  Thus, it is difficult for the Court to find any serious or significant prejudice to the Defendant if Plaintiff is permitted to amend its complaint.

The Court recognizes that although Defendant appears to have full information regarding the details of, and agreements governing, the Family Heritage Life dispute ( Def.'s Mot. Summ. J. 15, 35-37, doc. # 29; Def.'s Reply 17, doc. # 40), Defendant also states that the timing of the

8

Westfield Insurance dispute is still unclear, even though Defendant later admits that the dispute is properly governed by the Captiva Agreement. (See Def.'s Mot. Summ. J. 11, 38.) This discrepancy indicates that some further discovery may be necessary, and Defendant has argued that it did not have the time to conduct vigorous discovery on these claims. Given these circumstances, there is likely sufficient good cause to modify the scheduling order to allow for limited discovery on these additional claims and reset dispositive motion deadlines. Consequently, some additional time and expense might be incurred. However, given that extensive discovery was already conducted, encompassing, for example, over 500 pages of deposition testimony from Plainitff's President, Mr, Boyd, that expense should be minimal. (See Boyd Dep., docs. ## 31-1, 31-3, 31-9.) The addition of these claims would not constitute "drastic" changes, as the substance of these claims appears well known to Defendant, and the additional claims are based on the same legal theory of recovery. Therefore, the Court finds that Defendant will not suffer significant prejudice, nor will these proceedings be unduly delayed, if Plaintiff is granted leave to amend its complaint. It is in the interest of justice, and in that of trying this case on its merits, to grant Plaintiff's motion.

### III.     Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Leave to File a Second Amended Complaint (doc. # 34) and **DENIES** as moot Defendant's Motion for Summary Judgment directed to Plaintiff's Amended Complaint (doc. # 29). Defendant shall be given leave to refile a motion for summary judgment directed to Plaintiff's Second Amended Complaint. Furthermore, the parties shall contact the Magistrate Judge's Chambers no later than two (2) weeks from the filing of this Order to schedule a status conference to discuss

modification of the scheduling order.

**IT IS SO ORDERED.**


Date: March 29, 2010                               **/s/ John D. Holschuh**
                                                   John D. Holschuh, Judge
                                                   United States District Court