**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **REENGINEERING CONSULTANTS,** | : | |
| **LTD. d/b/a RESULTS** | | |
| **ENGINEERING,** | : | **Case No. 2:08-cv-47** |
| **Plaintiff,** | : | **Judge Holschuh** |
| **v.** | : | **Magistrate Judge Abel** |
| **EMC CORP. f/k/a CAPTIVA** | : | |
| **SOFTWARE CORP.,** | | |
| | : | |
| **Defendant.** | | |

**MEMORANDUM OPINION & ORDER**

This matter is currently before the Court on Defendant's motion for attorneys' fees and costs. (Doc. 57).  In support of its motion, Defendant relies on an attorney fee provision in an agreement between Captiva Software Corporation and Reengineering Consultants, Ltd. (the "Captiva Agreement").  At issue is the extent to which that provision applies to the facts of this case.  Also at issue is whether Defendant is judicially estopped from relying on that provision, having previously successfully argued in its motion for summary judgment that the Captiva Agreement applied to only one of the nine disputes that formed the basis for Plaintiff's complaint.  For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.     Background and Procedural History**

A complete account of the relevant facts is set forth in this Court's July 16, 2010 Memorandum Opinion & Order granting Defendant's motion for summary judgment and will not be repeated here.  To summarize, however, in June of 2004, Plaintiff entered into a contract with SWT USA, Inc.  The SWT Agreement permitted Plaintiff to market and distribute SWT's b-Wize Dispatcher software.  In October of 2004, Plaintiff entered into a contract with Captiva Software

Corporation. The Captiva Agreement authorized Plaintiff to market and distribute four other software applications. In November of 2004, Plaintiff entered into a Marketing Support Agreement with EMC Corporation. In May of 2005, Captiva acquired SWT, and in December of 2005, EMC acquired Captiva.

The Captiva Agreement provided that "Captiva will not knowingly solicit orders from [Plaintiff's] End Users or prospects and will make all reasonable efforts to refer inquiries it knowingly receives from such parties to [Plaintiff]." (Captiva Agreement at ¶8(d)). Neither the SWT Agreement nor the Marketing Support Agreement contained a similar "rules of engagement" provision. The Captiva Agreement was never modified by a signed writing to include the SWT Agreement or the Marketing Support Agreement.

In January of 2008, Plaintiff filed suit against EMC, alleging breach of contract and tortious interference with business relationships. Plaintiff maintained that Captiva violated the rules of engagement provision in the Captiva Agreement by knowingly soliciting orders from nine of Plaintiff's customers or prospective customers. On January 14, 2009, the Court dismissed the tortious interference claim.

In June of 2009, EMC moved for summary judgment on the breach of contract claims, arguing that the rules of engagement provision in the Captiva Agreement did not apply to the majority of the disputes at issue. EMC noted that seven of the nine disputes involved the sale of b-Wize Dispatcher software, a product governed solely by the SWT Agreement.[1] The Court agreed that the Captiva Agreement was inapplicable, and found that the one-year statute of limitations

---

[1] Those seven customers included FirstMerit Bank, Lucas County Criminal Justice Coordinating Council, Ohio State Term Schedule, Ohio Department of Health, Lithia Motors, ACS, and Family Heritage Life Insurance.

contained in the SWT Agreement barred these seven claims.  The Court concluded that the eighth

dispute, involving the Ohio Department of Public Safety ("ODPS"), was governed only by the

Marketing Support Agreement. The Court found that the ninth dispute, involving Westfield

Insurance, was governed by the Captiva Agreement but that Plaintiff's claim for consequential

damages was barred by the express provisions of that contract.  The Court therefore granted EMC's

motion for summary judgment on all of the breach of contract claims.

## II.    Motion for Attorneys' Fees and Costs

EMC has now filed a motion seeking attorneys' fees and costs related to this lawsuit.  In

support, EMC relies on paragraph 12(g) of the Captiva Agreement.  That provision states that "[t]he

prevailing party in any legal action brought by one party against the other and arising out of this

Agreement will be entitled to . . . reimbursement of its expenses, including court costs and attorneys'

fees."  (Ex. 1 to Mot. for Atty. Fees).  EMC seeks  $268,760.44 in attorneys' fees and $19,089.38

in costs related to eight of the nine disputes at issue.  Because Plaintiff eventually conceded that the

ODPS dispute did not arise out of the Captiva Agreement, EMC has already reduced its demand

by 1/9th.

### A.    Seven Disputes Governed by SWT Agreement

With respect to the seven disputes that the Court has already found were governed solely by

the SWT Agreement, Plaintiff argues that EMC has no contractual right to attorneys' fees or costs.

In the alternative, Plaintiff argues that because EMC previously successfully argued that the Captiva

Agreement does not apply to these disputes, EMC is judicially estopped from relying on that

Agreement in support of its request for fees and costs.  Because the Court finds that EMC has no

contractual right to recover attorneys' fees and costs in connection with these seven disputes, the

Court does not reach the question of judicial estoppel.

EMC acknowledges that the Court has previously concluded that these seven disputes involved the sale of b-Wize Dispatcher software and are, therefore, governed solely by the SWT Agreement. But, according to EMC, this holding does not necessarily foreclose a finding that, as the "prevailing party in [a] legal action . . . arising out of" the Captiva Agreement, EMC is entitled to reimbursement of its attorneys' fees and costs. According to EMC, the question of whether the individual disputes were, in fact, governed by the Captiva Agreement is distinguishable from the question of whether the "legal action" arose out of that Agreement.

EMC notes that Plaintiff's Complaint was based on allegations that Captiva's conduct with respect to these seven disputes violated the rules of engagement provision contained in the Captiva Agreement. EMC had to defend against these allegations, and did so by successfully arguing that the Captiva Agreement did not apply. EMC maintains that, under these circumstances, the Court should find that the lawsuit "arose out of" the Captiva Agreement and, in accordance with paragraph 12(g) of that Agreement, should award EMC its legal fees and costs incurred in connection with those seven claims.

In the Court's view, the question of whether this is "legal action . . . arising out of" the Captiva Agreement is largely a matter of contract interpretation. Under California law, which the parties agree governs the Captiva Agreement, the Court must give effect to the parties' mutual intent at the time the contract was formed. Cal. Civil Code § 1636. If possible, that intent is to be determined solely from the written terms of the contract. Cal. Civil Code § 1639. However, the court may also consider "the circumstances under which the contract was made and the matter to which it relates." American Alternative Ins. Corp. v. Superior Court, 37 Cal. Rptr.3d 918, 922 (Cal.

4

Ct. App. 2006); Cal. Civil Code § 1647.[2]

At the time the Captiva Agreement was formed, the parties could not possibly have intended that a legal dispute arising out of the sale of b-Wize Dispatcher software would trigger the Captiva Agreement's attorneys' fee provision. As the Court explained in its July 16, 2010 Memorandum Opinion and Order, at the time the Captiva Agreement was signed, Captiva and SWT were separate companies and Captiva had no authority to grant Plaintiff the right to resell the b-Wize Dispatcher software. (7/16/10 Mem. Op. & Order at 22). Rather, the Captiva Agreement governed the sale of just four software products -- FormWare, InvoicePack, ClaimPack, and Input*Accel*. Therefore, it had to be the parties' intent at the time of contracting that a "legal action . . . arising out of" the Captiva Agreement would be limited to disputes involving the sale of one of these four products. Even after Captiva acquired SWT, the parties distinguished between the SWT Agreement and the Captiva Agreement, and turned to the provisions of the SWT Agreement when disputes arose concerning b-Wize Dispatcher software. (Id.).

As Plaintiff notes, EMC cannot have it both ways. If, as EMC argued in its motion for summary judgment, the Captiva Agreement does not apply to the sale of b-Wize Dispatcher software, then EMC cannot rely on the attorneys' fee provision contained *within* that Agreement to recover its expenses related to a legal action involving the sale of b-Wize Dispatcher software. As to the seven disputes involving the sale of the b-Wize Dispatcher software, the Court finds that the

---

[2] EMC urges the Court to interpret the phrase "arising out of" very broadly. It argues that California courts interpreting this language have required only a "minimal causal connection or incidental relationship." See Transport Indem. Co. v. Schnack, 131 Cal.App.3d 149, 152 (Cal. Ct. App. 1982); Vitton Constr. Co. v. Pacific Ins. Co., 110 Cal.App.4th 762, 766-67 (Cal. Ct. App. 2003). The cases cited, however, involve the interpretation of insurance contracts, which are strictly construed in favor of the insured. In contrast, the Captiva Agreement is a commercial contract between two businesses with equal bargaining power.

attorneys' fee provision in the Captiva Agreement does not apply.  Therefore, EMC is not entitled to reimbursement of its legal fees and costs incurred in connection with these seven disputes.

### B.     Westfield Insurance Dispute

Plaintiff acknowledges that the Court has held that the dispute involving Westfield Insurance did arise out of the Captiva Agreement.  Accordingly, the Court finds that EMC is entitled to its attorneys' fees and costs incurred in connection with that one dispute.  Plaintiff asks for a hearing to determine the amount of fees and costs attributable to that portion of this lawsuit.  The Court sees no need for a hearing.  In all likelihood, the fees and costs attributable to this one particular claim are not easily isolated and an evidentiary hearing would shed little light on this issue.

The Court notes that prior to filing its motion, EMC reduced its demand by 1/9 to account for the ODPS dispute, the one claim which Plaintiff agreed did not arise out of the Captiva Agreement.  In determining an appropriate award of attorneys' fees and costs incurred by EMC in connection with the dispute involving Westfield Insurance, the Court finds it appropriate to use this same methodology, and awards EMC 1/9th of its total attorneys' fees and costs.  As EMC notes, Plaintiff has not argued that the amounts requested are unreasonable.  By the Court's calculations, EMC is entitled to $33,595.06 in attorneys' fees and $2,386.17 in costs, a total of $35,981.23.[3]

---

[3]  EMC contends that 8/9ths of its total attorneys' fees equals $268,760.44 and 8/9ths of its total costs equals $19,089.38.  Total attorneys' fees for all nine disputes would therefore be $302,355.50 and total costs would be $21,475.55.  In calculating the above award, the Court has divided these sums by 9.

**III.     Conclusion**

Defendant's motion for attorneys' fees and costs (Doc. 57) is **GRANTED IN PART and DENIED IN PART**.  With respect to attorneys' fees and costs incurred in connection with the seven disputes which the Court previously determined were governed solely by the SWT Agreement, the Court denies Defendant's motion.  Defendant makes no claim for attorney fees and costs with respect to the dispute involving ODPS.  With respect to attorneys' fees and costs incurred in connection  with the dispute involving Westfield Insurance, which the Court previously found was governed by the Captiva Agreement, the Court grants Defendant's motion and awards Defendant $33,595.06 in attorneys' fees, plus $2,386.17 in costs, for a total of $35,981.23.

**IT IS SO ORDERED.**

Date: January 18, 2011                          **/s/ John D. Holschuh**
                                                John D. Holschuh, Judge
                                                United States District Court